UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ROBERT WAGNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:07-CV-129 |
| ) | (GUYTON) |
| NOVARTIS PHARMACEUTICALS ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment. [Doc. 6]. On October 16, 2007, the parties appeared before the Court for a hearing on a discovery dispute between the parties regarding whether Thomas Ebeling ("Ebeling"), CEO of Novartis Pharmaceuticals Corporation,[1] could be deposed in this matter. Attorneys Anne Lamkin, James K. Scott, and Cynthia Wilkinson appeared representing Plaintiff Robert Wagner ("Plaintiff"), and attorneys Aaron Gelb, Lawrence Summers, and Patty Wheeler appeared representing Defendant Novartis Pharmaceuticals Corporation ("Defendant"). At the conclusion of the hearing, the parties requested the opportunity to file post hearing briefs. The parties were given until October 23, 2007, to file supplemental briefs and until October 30, 2007,

---

[1] Plaintiff's brief indicates that Ebeling's position may have changed, that Ebeling may now be the head of the consumer health division of Defendant. [Doc. 23 at 1 n.1] Given the absence of any evidence of such a change of position, the Court will proceed under the assumption that Ebeling remains a high level executive with Defendant.

to file responses to any supplements. The parties filed their supplemental briefs [Docs. 23, 24] on October 23, 2007, and Defendant filed a response [Doc. 25] on October 30, 2007. All supplements and responses having been filed, the matter is now ripe for adjudication.

Defendant moves the Court to preclude Plaintiff from deposing Ebeling in this matter. Defendant contends that Plaintiff has already deposed Ebeling in a similar matter, and during that earlier deposition had the opportunity to question Ebeling as to Ebeling's knowledge of events related to the instant litigation. Defendant contends that Ebeling's prior testimony revealed that Ebeling lacks any personal knowledge of the events at issue in this case, and thus that the deposition of Ebeling would be a waste of time and amount to nothing more than harassment of a high level executive.

Plaintiff disagrees, arguing that Ebeling does have personal knowledge of the events at issue and that Ebeling's deposition should thus be allowed. Plaintiff contends that Defendant's website contains a webpage entitled "Ask Ebeling" [See Doc. 24-2] and that Plaintiff submitted questions to Ebeling through the "Ask Ebeling" webpage. Plaintiff contends that, because Ebeling was involved in answering Plaintiff's question to "Ask Ebeling," that Ebeling does have unique personal knowledge of the events at issue, and thus his deposition should be allowed.

Courts have held that "[w]hen a party seeks to depose high-level decision makers who are removed from the daily subjects at issue in the litigation, the party must first demonstrate that the proposed deponent has 'unique personal knowledge' of facts relevant to the dispute." Marscio v. Sears Holding, No. 06-10235, 2007 U.S. Dist. LEXIS 22757, at *4 (E.D. Mich. Mar. 29, 2007) (citations omitted). "In the absence of a showing of unique personal knowledge, the circuit courts, including the Sixth Circuit, have upheld the entry of a protective order precluding the

2

depositions of high level company executives." Id. (citing Bush v. Dictaphone Corp., 161 F.3d 363, 367 (6th Cir. 1998) (upholding denial of plaintiff's request to depose high-ranking officer where there was no showing that individual was involved in the termination at issue); Lewelling v. Farmers Ins. of Columbus, Inc., 879 F.2d 212, 218 (6th Cir. 1989) (upholding district court's exercise of discretion in granting protective order barring plaintiffs from deposing their employer's chief executive officer, who lacked personal knowledge of relevant facts)).

In the instant matter, it is undisputed that Ebeling is a high level executive of Defendant. Thus, in order to depose Ebeling, Plaintiff must show that Ebeling possesses unique personal knowledge of facts relevant to the instant litigation. Plaintiff argues that Ebeling possesses unique personal knowledge related to Plaintiff's submission of questions to the Ask Ebeling webpage on July 14, 2004, August 3, 2004, and September 2, 2005. The July 14, 2004 inquiry related to Plaintiff being denied the 2002 International Sales Award for the Veterans Administration sales force. [Doc. 23-8 at 1] On August 3, 2004, Plaintiff re-submitted the July 14, 2004, inquiry because he had not received a response to the July 14, 2004 inquiry. [Id. at 2] The September 20, 2005, submission was another re-submission of the July 14, 2004 inquiry. [Id. at 4] Thus, each of Plaintiff's submissions to the Ask Ebeling webpage related to Plaintiff being denied the 2002 International Sales Award.

However, at the earlier deposition of Ebeling, Ebeling was asked about his knowledge of the events relating to the instant lawsuit. Specifically, Defendant points to the following lines of questioning:

> Q: Did anybody ever tell you that there's an employee by the name of Bob Wagner who also made complaints that he was being discriminated against because of his military commitments?

3

A: I just learned about it yesterday.

[Doc. 26-2 at 2]

Q: Let me show you what I've marked as Plaintiff's Exhibit 10, which is an e-mail from Jeff Griffin to an employee by the name of Robert Wagner.

A: Mm-hmm.

Q: Have you ever seen a copy of this before today?

A: No.

[Id. at 3]

Q: Did anybody ever tell you that an employee by the name of Robert Wagner had been informed that he could not put "Captain Bob" on his business cards?

A: No one ever told me.

Q: If Bob Wagner was in fact a captain in the military and was very proud of that and had for many years put "Captain Bob" on his Novartis business cards, do you see any problems with that?

A: I'm not too familiar with the practices in the U.S. market to answer this question professionally.

Q: Did anybody ever discuss with you or talk with you about the fact that there was an employee that complained, that they felt that it was discrimination that they not be allowed to include their military rank on their business card?

A: I don't remember

Q: So they could have, but you just don't remember?

A: Yes.

[Id. at 4]

Q: Mr. Ebeling, I'm going to show you what I've marked as Plaintiff's Exhibit 12 to your deposition. This is a fax to Jeff Griffin

4

and Michelle - - excuse me, from Jeff Griffin to Michelle Dinoff regarding an employee by the name of Bob Wagner. My first question is have you ever seen this document before?

A: No.

Q: And you've never heard of Bob Wagner before today, is that correct?

A: I heard about him yesterday.

Q: Don't want to talk about that.

A: Mm-hmm.

Q: But my question is nobody from human resources in the United States contacted you to discuss any complaints by Bob Wagner?

A: No.

[Id. at 5]

Q: Did you review any documents before your deposition today?

A: I reviewed two photocopies, one being the question Mr. Copeland asked and the other one was the question of Mr. Wagner. Those were the only two documents that I reviewed yesterday.

Q: So Bob Wagner actually complained to Ask Ebeling as well, correct?

A: Based on what I have seen yesterday, I remember, yes.

Q: And did his complaint involve discrimination based on military commitments?

A: If I recall correctly, yes.

[Id. at 6]

Q: After Mr. Wagner made this complaint, did anybody ever tell you that he also felt like that he had been discriminated against

> because he was number 1 in the VA sales division and was not considered for an international sales award?
>
> A: I think that was I guess part, if I recall correctly, of his question posed on the internet. But I'm not sure if someone has made me aware that he has filed an official complaint. But I remember it was part of the question he had posed on the internet site.
>
> Q: If everybody else who was number 1 in their division was considered for the international sales aware and he was also number 1 equal to them, should he also have been considered?
>
> A: There is a reason that we take a look how sizeable is the field for us. And if you are number 1 over 500 people sales force or number 1 over 1,000 people sales force there's a difference. And we only invite .5 percent to the award. And I can certainly understand his feelings that he was disappointed not being selected.
>
> Q: If another employee who had a less percentage in sales, and I'm working that incorrectly, let me know, was allowed to attend this meeting and Mr. Copeland was not, would that concern you?
>
> Mr. Wolf: Mr. Copeland?
>
> Q: I'm sorry, Mr. Wagner.
>
> A: I would like to understand why.

[Id. at 7] These lines of questioning revealed that Ebeling possessed little, if any, personal knowledge of the events in question.

In light of Ebeling's prior deposition testimony, the Court finds that Plaintiff has not shown that Ebeling possesses unique personal knowledge relevant to the instant litigation. In the absence of such a showing, Plaintiff shall be precluded from deposing Ebeling. However, Plaintiff shall be allowed, if he so chooses, to take Ebeling's deposition upon written questions pursuant to

Rule 31 of the Federal Rules of Civil Procedure. If, after engaging in further discovery, there is some indication that Ebeling possesses unique personal knowledge relevant to this case, then Plaintiff may renew his request to depose Ebeling at that time.

**IT IS SO ORDERED.**

ENTER:

s/ H. Bruce Guyton
United States Magistrate Judge