UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ROBERT WAGNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:07-CV-129 |
| ) | (GUYTON) |
| NOVARTIS PHARMACEUTICALS ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 6], on the defendant's Motion for Summary Judgment. [Doc. 46] The parties appeared before the Court on July 7, 2008, for a hearing on the instant motion. Attorneys James K. Scott, Anne Lamkin Durward, and Cynthia Wilkinson appeared on behalf of the plaintiff, and attorneys Lawrence L. Summers, Aaron R. Gelb, and Patty K. Wheeler appeared on behalf of the defendant. After the hearing, the Court took the motion under advisement, and it is now ripe for adjudication. For the reasons set forth below, the defendant's motion [Doc. 46] will be **GRANTED in part** and **DENIED in part**.

### I.     Relevant Facts

In 1991, plaintiff Robert Wagner ("Wagner") was hired by Ciba-Geigy, defendant Novartis Pharmaceuticals Corporation's ("Novartis") predecessor, as a sales professional. In 1992, Wagner advanced to the position of Medical Representative. In 1995, Wagner was promoted to Senior

Medical Representative, and then promoted again to Institutional Specialist. On May 9, 1998, Wagner began his service with the Air Force Reserve.

In 2000, Wagner was promoted to Senior Health Systems Specialist. In 2001, Wagner became a Veterans Affairs Specialist. In 2002, Wagner received the Cornerstone Club Award, a prestigious sales award at Novartis. Wagner also received the President's Club Award and the MVP award. Sometime in early 2002, Wagner attended Management Development -1 ("MD-1"), the first in a three part training course used by Novartis to train employees for management positions in the company. In May, 2002, Wagner applied for the position of Area Sales Manager in the Veteran's Affairs Specialty Field. Wagner did not receive an interview and was not selected for the position.

In February, 2003, Wagner attended and failed MD-2. In 2004, Wagner became a Senior Hospital Specialist, and then became a Pioneering Member of the Eastern Hospital Specialists Council. In July, 2004, Wagner applied for a District Manager position in Knoxville, Tennessee, but was not interviewed and was not selected for the position. In January, 2005, Wagner applied for another District Manger position in Knoxville, but was not interviewed and was not selected. In March, 2005, Wagner successfully completed MD-2. In August, 2005, Wagner successfully completed MD-3.

On September 15, 2005, Wagner applied for a District Manager position in San Antonio, Texas. Wagner was not interviewed for this position and was not selected. In October, 2005, Wagner applied for a District Manager position in Seattle, Washington. Wagner was not interviewed for this position and was not selected. In November, 2005, Wagner applied for an Area

Sales Manager position in Tampa, Florida. Wagner was not interviewed for the position and was not selected.

In December, 2005, Wagner was offered a management position with Sanofi-Aventis, a competitor of Novartis. On January 3, 2006, Wagner submitted a letter of resignation to Novartis. January 31, 2006, was Wagner's last day of employment with Novartis. On February 1, 2006, Wagner began work with Sanofi-Aventis. On April 11, 2007, Wagner filed the instant suit, alleging that Novartis discriminated against him by failing to promote him, by retaliating against him for protected activities, and by constructively discharging him, all in violation of the Uniformed Services Employment and Re-employment Rights Act ("USERRA"), 38 U.S.C. § 4301, *et seq*. Wagner further alleges that Novartis' actions violated Tennessee common law and the Tennessee Public Protection Act, Tenn. Code. Ann. § 50-1-304.

**II.     Standard of Review**

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., 475 U.S. at 587. To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The genuine

3

issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id.

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Id. at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

### III. Positions of the Parties

Novartis seeks summary judgment in its favor as to all of Wagner's claims, arguing that the four year statute of limitations bars some of Wagner's claims, that Wagner's military service was not a motivating factor in any of the employment decisions made by Novartis, that Novartis did not discriminate or retaliate against Wagner, and that Wagner was not terminated or constructively discharged. Wagner opposes the motion, arguing that there is no statue of limitations for USERRA claims, and further arguing that there are genuine issues of material fact as to each of his claims, and thus summary judgment is not appropriate.

### IV. Analysis

#### A. Statute of Limitations

The first issue before the Court is whether part of Wagner's USERRA claim is barred by a statute of limitations. USERRA states, in pertinent part, that "[n]o State statute of limitations shall apply to any proceeding under this chapter." 38 U.S.C. § 4323(i). Under USERRA, "[t]he term

4

'State' means each of the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, the Virgin Islands, and other territories of the United States (including the agencies and political subdivisions thereof)." 38 U.S.C. § 4303(14). Thus, by the plain language of the statute, state statutes of limitations do not apply to USERRA claims, but federal statutes of limitations face no such bar.

In 1990, Congress enacted a general four year statute of limitations on certain civil claims brought under federal law. 28 U.S.C. § 1658. Specifically, the statute provides that "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section [enacted Dec. 1, 1990] may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a). Thus, under federal law, any civil claims arising under federal law enacted after December 1, 1990, are barred by a four year federal statute of limitations unless specifically excluded from such a limitations period.

USERRA was enacted in 1994, but the statute which USERRA amended, the Veterans' Reemployment Rights Act ("VRRA"), was enacted prior to 1990. Initially, courts held that "Section 1658 applies 'only when Congress establishes a new cause of action without reference to preexisting law,'" and thus ruled that the four year statute of limitations did not apply to USERRA because USERRA referenced preexisting law, the VRRA. Akhdary v. City of Chattanooga, No. 1:01-CV-106, 2002 U.S. Dist. LEXIS 26898, at *15 (E.D. Tenn. May 22, 2002) (quoting Zubi v. AT&T Corp., 219 F.3d 220, 225 (3d Cir. 2000).

However, in 2004, the United States Supreme Court's decision in Jones v. R. R. Donnelley & Sons Company, 541 U.S. 369 (2004), provided new guidelines for the application of Section 1658. The Jones Court held that "a cause of action 'aris[es] under an Act of Congress enacted' after

5

December 1, 1990 – and therefore is governed by § 1658's 4-year statute of limitations – if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." Jones, 541 U.S. at 382. In applying Jones to USERRA, several courts have held that USERRA broadened the rights available to litigants under the VRRA, thus subjecting USERRA to the Section 1658 statute of limitations. Aull v. McKeon-Grano Associates, Inc., No. 06-2752 (HAA), 2007 U.S. Dist. LEXIS 13008, at *13 (D.N.J. Feb. 26, 2007); O'Neil v. Putnam Retail Management LLP, 407 F. Supp. 2d 310, 316 (D. Mass. 2005); Nino v. Haynes International, Inc., No. 1:05-CV-0602-JDT-TAB, 2005 U.S. Dist. LEXIS 43971, at *17 (S.D. Ind. Aug. 19, 2005). The Court finds these cases persuasive, and similarly holds that the federal statute of limitations established by Section 1658 applies to claims brought under USERRA.

In arguing that USERRA is not bound by the Section 1658 statute of limitations, Wagner cites to several cases, but they all pre-date Jones, and are thus no longer controlling. Wagner also relies on the regulations of the Department of Labor. See 20 C.F.R. 1002.311 (ruling that USERRA does not have a statute of limitations, but cautioning that courts have held otherwise). However, as the Department of Labor notes in its commentary on the regulations, "[a]lthough the Department will continue to advance the view that section 1658 does not apply to cases arising under USERRA, there are conflicting decisions regarding the applicability of section 1658 to USERRA, and the issue will ultimately be resolved by the courts. Until the issue is resolved, potential USERRA plaintiffs would be well advised to file USERRA claims within section 1658's four-year period." Department of Labor Comments, 70 Fed. Reg. 75,246, 75,288 (Dec. 19, 2005). The Court notes that the plain language of USERRA does not exempt it from federal statutes of limitations, and thus finds that the "otherwise provided by law" exception of Section 1658 does not apply to USERRA. Accordingly,

to the extent that federal regulations seek to exempt USERRA from a valid statute enacted by Congress, the Court finds that the Department of Labor has exceeded its regulatory authority and that 20 C.F.R. 1002.311 is void and of no legal effect.

Given that Wagner's USERRA claims are bound by a four year statute of limitations, his claims arising outside the limitations period must be dismissed. Accordingly, the defendant's motion for summary judgment [Doc. 46] will be **GRANTED** as to the plaintiff's claims that arose more than four years prior to the filing of the instant action.

B.    Constructive Discharge

The Court turns next to Wagner's claims of constructive discharge. The Sixth Circuit has held that an employee can demonstrate a prima facie case of constructive discharge by showing that the employer "deliberately create[d] intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must actually quit." Moore v. KUKA Welding Sys. & Robot Corp., 171 F.3d 1073, 1080 (6th Cir. 1999); see also Campbell v. Florida Steel Corp., 919 S.W.2d 26, 34 (Tenn. 1996) ("An employee need only show that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign."). The Sixth Circuit has also held that an "employee who quits a job in apprehension that conditions may deteriorate later is not constructively discharged. Instead, the employee is obliged 'not to assume the worst, and not to jump to conclusions too fast.'" Agnew v. BASF Corp., 286 F.3d 307 (6th Cir. 2002). Finally, the Sixth Circuit has also held that "a plaintiff cannot establish a constructive discharge by claiming, without more, that his employer's failure to promote [him] to what [he] perceives as [his] rightful position created intolerable work conditions." Gold v. FedEx Freight E. Inc., 487 F.3d 1001, 1011 (6th Cir.

7

2007). "In sum, an employee's concern of little chance of future advancement does not establish a constructive discharge." Bielert v. Northern Ohio Properties, 863 F.2d 47 (6th Cir. 1988)

In the instant case, Wagner argues that he can sustain a constructive discharge claim based on Novartis' failure to promote him and failure to provide him timely access to the management training program, thereby forcing him to quit. Even assuming all of the claims made by Wagner are true, the Court disagrees. The Court finds that Wagner's claims do not rise to the level where a reasonable person would believe that his only option was to quit. Rather, Wagner appears to have become frustrated with his rate of advancement within the company and assumed the worst. Wagner's assumptions that he would never be promoted and that he would face some discriminatory termination, as allegedly happened to Wagner's coworker, Darryl Copeland, cannot form the basis for a constructive discharge claim. Nor does the Court find Novartis' other alleged actions to have risen to the level that would force a reasonable person to quit. Wagner argues that Novartis directed him to remove his military rank from his business cards, but that directive was latter rescinded. Wagner argues that he was advised to "tone down" his military experience on his resume, but that comment was made by a coworker offering friendly advice, not by Wagner's supervisor speaking from a position of authority.

The Court does not doubt that Wagner was frustrated by the perceived slights against him, but the Court does not find that they rise to the level necessary to support a claim of constructive discharge. Accordingly, the defendant's motion for summary judgment [Doc. 46] will be **GRANTED** as to Wagner's federal and state law claims of constructive discharge.

C. Remaining Claims

The Court turns next to Wagner's remaining claims under USERRA. USERRA protects employees who are absent from employment for service in the military. Under 38 U.S.C. § 4311, an employer cannot use an employee's military service as a motivating factor for adverse employment action toward the employee, unless the employer can prove that the action would have been taken in the absence of the employee's service. 38 U.S.C. § 4311(c)(1). Wagner alleges that his military service was a motivating factor in Novartis' decision not to promote him and to otherwise discriminate against him, thus violating USERRA.

"The term 'motivating factor' means that if the employer was asked at the moment of the decision what its reasons were and if it gave a truthful response, one of those reasons would be the employee's military position or related obligations." Hance v. Norfolk S. Ry. Co., No. 3:04-CV-160, 2006 U.S. Dist. LEXIS 32276, at *10-11 (E.D. Tenn. May 17, 2006). In other words, if Novartis "relied upon, took into account, considered, or conditioned its decision" on Wagner's military status, then his military status was a motivating factor. Id.

The absence of direct evidence of improper motivation is not fatal to Wagner's case. Id. Discriminatory motive may be proven by either direct or circumstantial evidence. Id. (citing Sheehan v. Dep't of Navy, 240 F.3d 1009, 1014 (Fed. Cir. 2001)). Because direct evidence rarely exists, discriminatory motivation may be reasonably inferred from a variety of factors, including:

> proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

Id. at *11-12.

In a motion for summary judgment, the plaintiff must establish a prima facie case by coming forth with some evidence, direct or circumstantial, that creates a triable issue that his military status was "a motivating factor," even if it was not the sole factor, to withstand summary judgment dismissal. Id. at *12 (citing Curby v. Archon, 216 F.3d 549, 557 (6th Cir. 2000)). Under USERRA, both the burden of production and the burden of persuasion shift to the defendant employer once the prima facie case has been established. Id. In other words, the defense must prove the nonpretextual, permissible reason for termination notwithstanding uniformed service as an affirmative defense. Id.

In the instant case, the Court finds that Wagner has established, through circumstantial evidence, a prima facie case that Novartis failed to promote Wagner, and otherwise retaliated against him, because of his military service. The Court finds the combination of factors present in this case, including, but not limited to, Wagner's delayed progress through the management training program, Novartis' reliance on unspecified requirements in its promotion decisions, Novartis' failure to follow its procedures by properly notifying Wagner of the status of the positions he had applied for, Novartis' refusal to interview Wagner for any of the positions he applied for, and Novartis' apparent refusal to even consider Wagner's military management experience as a valid replacement for the alleged prior pharmaceutical management experience. Based upon these, as well as the other allegations presented by Wagner, he has met his initial burden.

In response, Novartis argues that Wagner's military service was not a factor in its decisions and argues that it would have made the same decisions regardless. At this stage in the proceedings, the Court cannot agree. The Court finds that, assuming the plaintiff's well-pled allegations are true, that there are disputed questions of material fact as to whether Wagner's military service was a

motivating factor in Novartis' decisions and whether Novartis would have made the same decisions in the absence of Wagner's service. These questions of fact include, but are not limited to, whether Wagner's delayed progress through the management training program was a result of his military service; whether Novartis' violation of its own policies as to the posting and filing of positions Wagner applied to was a result of Wagner's military service; and whether Wagner would have been denied the various positions he had applied for if not for his military service. In light of these questions of fact, the defendant's motion [Doc. 46] will be **DENIED** as to Wagner's remaining claims.

## V. Conclusion

Accordingly, for the reasons set forth above, the defendant's motion for summary judgment [Doc. 46] is hereby **GRANTED in part**, to the extent that the plaintiff's claims barred by the four year statute of limitations and his claims of constructive discharge, including his state law claims, are hereby **DISMISSED**, and **DENIED in part**, to the extent that the plaintiff's remaining claims shall proceed to trial.

**IT IS SO ORDERED.**

ENTER:

    s/ H. Bruce Guyton
United States Magistrate Judge